LAWRENCE W. TRAUDT ET AL., APPELLANTS, V. NEBRASKA PUBLIC POWER DISTRICT, APPELLEE.

251 N. W. 2d 148

Filed March 2, 1977. No. 40787.

E. H. Powell, for appellants.

Barlow, Johnson, DeMars & Flodman, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

In 1973, plaintiffs, landowners, brought this action against the defendant, power district, to recover additional compensation for a power line easement across the plaintiffs' land which they had conveyed to the defendant in 1968. The defendant demurred to the plaintiffs' petition as amended, and the court sustained the demurrer. After the plaintiffs elected to stand on their petition, the court dismissed the action. The plaintiffs have appealed to this court and the question is whether the petition as amended stated a cause of action.

The plaintiffs allege that they were the owners of a certain quarter section of land in Hamilton County, Nebraska; that in 1968 the power district purchased an easement across their land; that as a part of the negotiations for said easement the defendant promised the plaintiffs that " 'if any other land owners get more money, then you will get more money' "; and that said statement was made orally and was not put in writing. Plaintiffs also alleged that they interpreted the words " 'other land owners' to mean persons who own lands in Hamilton County" from whom the defendant had purchased easements. The petition also alleged that the defendant had acquired a similar easement from another named party by virtue of eminent domain proceedings which "were finally determined in September, 1972." The petition alleged that "Defendant owes to Plaintiffs additional funds for the purchase by Defendant of said easement." An executed copy of the easement was attached to the petition and incorporated by reference. The contents of this conveyance will be discussed later in the opinion. The petition prayed for "damages caused by said easement in the sum of $16,000.00, computed to be the sum of $100.00 per acre for said lands."

The underlying legal questions are two: First, was proof of the alleged contemporaneous oral agreement

to pay some additional money barred by the parol evidence rule, and secondly, could such issue be properly determined upon demurrer. We answer both questions in the affirmative and uphold the judgment of the District Court dismissing the petition.

A succinct and cogent discussion of the parol evidence rule is contained in the manual, Evidence, Nebraska State Bar Association (1966), pp. 28-1 to 28-27, and affords a quick access to the basic authorities on all aspects of the subtle problems associated with the rule. In the discussion which follows we use the material therein contained, not only for its source material, but also for its format, and freely quote from it without specific acknowledgment and without indicating where we have made language changes to suit our own taste, or used other material.

The principles which govern this case are the following. The usual statement of the rule is that parol or extrinsic evidence will not be received to vary or add to the terms of a written agreement. See Theno v. National Assurance Corp., 133 Neb. 618, 276 N. W. 375. The rule is designed to preserve the integrity and certainty of written documents against disputes arising from fraudulent claims or faulty recollections of the parties' intent as expressed in the final writing. McCormick on Evidence, § 210, p. 427 (1954). ". . . *the rule is in no sense a rule of Evidence*, but a rule of Substantive Law. It does not exclude certain data because they are for one or another reason untrustworthy or undesirable means of evidencing some fact to be proved. . . . What the rule does is to declare that certain kinds of fact are legally ineffective in the substantive law; and this of course . . . results in forbidding the fact to be proved at all. . . ." 9 Wigmore on Evidence (3d Ed., 1940), § 2400, p. 3. See, also, Theno v. National Assurance Corp., *supra;* Arman v. Structiform Engineering Co., Inc., 147 Neb. 658, 24 N. W. 2d 723.

Where the parties have embodied their transaction into a writing, the rule applies to exclude evidence dehors the writing of prior or contemporaneous negotiations or agreements in regard to the same subject matter. Securities Acceptance Corp. v. Blake, 157 Neb. 848, 62 N. W. 2d 132; Gerdes v. Omaha Home for Boys, 166 Neb. 574, 89 N. W. 2d 849. The applicability of the rule depends in general upon whether the agreement has been integrated. Gerdes v. Omaha Home for Boys, *supra*. The usual controversy arises in cases of partial integration. Here the rule against disputing the terms of the document will be applicable to as much of the transaction as is embodied. 9 Wigmore on Evidence (3d Ed., 1940), § 2430, p. 97; Arman v. Structiform Engineering Co., Inc., *supra;* Elvidge v. Brant, 131 Neb. 1, 267 N. W. 169; Restatement, Contracts, § 239, p. 335.

The crucial question in this particular case is: In what manner is it to be determined whether the transaction was integrated into the conveyance which is the grant of the easement? Professor Corbin suggests that in the usual case the conveyance is not intended to be a complete integration of the terms of the agreement, e.g., recitals of receipt of consideration are not terms of the agreement, but simply statement of facts, the truth or untruth of which may be established by extrinsic evidence. Likewise, under some circumstances the fact that additional consideration was to be paid may be established. 3 Corbin on Contracts, §§ 586, 587, pp. 491, 501, 504; Norman v. Waite, 30 Neb. 302, 46 N. W. 639; Wiltrout v. Showers, 82 Neb. 777, 118 N. W. 1080; Schommer v. Bergfield, 178 Neb. 140, 132 N. W. 2d 345; Weiner v. Hroch, 188 Neb. 389, 196 N. W. 2d 907. Corbin recognizes, however, that if the transaction is completely integrated then evidence bearing or adding to the conveyance is not admissible. 3 Corbin on Contracts, § 586, p. 495.

What tests are to be applied to determine whether

the transaction has been completely integrated? The tests established by the Nebraska cases are three. One is that the question whether the writing embodies the whole or only a part of the transaction depends upon the "completeness" of the writing. A corollary of this test is that the writing is the "sole criteria" of its own completeness. A second test often used is that the question depends upon whether the evidence outside the writing "varies or contradicts" the terms of the writing. One of several opinions of this court stating the first test is S. Spiegal & Son v. Alpirn, 107 Neb. 233, 185 N. W. 415. Dawson County State Bank v. Durland, 114 Neb. 605, 209 N. W. 243, states the corollary of that rule. S. Spiegal & Son v. Alpirn, *supra,* as well as Cornhusker Development & Inv. Group, Inc. v. Knecht, 180 Neb. 873, 146 N. W. 2d 567, and other decisions of this court state the second test. The evidence manual we earlier referred to states that Wigmore criticizes both tests and that the question of integraion or partial integration depends upon intent, viz., whether the writing was intended to cover a certain subject of negotiation. Intent should be determined from the "conduct and language of the parties and the surrounding circumstances." This court appears to have, in some cases, approved the statements of Wigmore as well as the rule of Restatement. Arman v. Structiform Engineering Co., Inc., *supra;* 9 Wigmore on Evidence, § 2430, p. 97. See, also, Elvidge v. Brant, *supra.*

We quote from Restatement, Contracts, section 240, page 335: "(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

"(a) is made for separate consideration, or

"(b) is such an agreement as might naturally be

made as a separate agreement by parties situated as were the parties to the written contract.

"(2) Where no consideration is stated in an integration, facts showing that there was consideration and the nature of it, even if it was a promise, or any other facts that are sufficient to make a promise enforceable, are admissible in evidence and are operative."

The court, not the jury, decides as a preliminary matter the extent to which the transaction is embodied in the writing, that is, the question of integration. Arman v. Structiform Engineering Co., Inc., *supra*.

It seems to us that the tests, including those of Wigmore and Restatement, are not necessarily mutually exclusive. Sometimes the court will have to look no further than the instrument itself and sometimes it will be proper to consider the surrounding circumstances, including the conduct and language of the parties as the Wigmore rule would require.

In this case we have before us the written instrument and the surrounding circumstances and language dehors the writing as alleged by the plaintiffs, which allegations must be accepted as factual since the demurrer admits the facts but, of course, does not give them effect if as a matter of law they are incompetent.

The time has now come to discuss the instrument of conveyance. It is in a common form of grant of easement and, after naming the grantors, states: ". . . in consideration of $1.00, receipt of which is hereby acknowledged, and the further payment of a sum to make a total payment of $1,000.00 for 4 poles . . . when set." It then contains the granting clause and description of the easement, together with describing various other rights of the grantee and the grantors. The instrument shows how the stated consideration is calculated as follows: "Scheduled payment for rights herein granted shall be made to the Grantor in the

amount above provided, which has been calculated on the following basis:

"In Untillable Field or Pasture"
Per Pole . . . . . . . . . . .    $————————————
In Cultivated Fields      In Irrigated Fields
$————————————      $ 4 poles $250.00 ea." Like spaces and lines for the categories "Per Anchor," "Tree Cutting & Trimming," and "Overhang of Conductors," as well as a blank space for an additional item and for a dollar insertion are all left unfilled. The instrument also contains the following provision: "The Grantee agrees to pay the Grantors or lessee, as their interests may appear for any damage to personal property, fences, livestock, and to growing crops caused by the survey, construction, reconstruction, inspection, repair, maintenance, operation, and removal of said line. Final payment shall be made on or before 60 days after completion of the construction stated herein. It is further agreed that in the future, all claims for damages must be submitted to the Grantee in writing within 90 days of such occurrence; otherwise, it is agreed that said claim for damages shall have been waived."

So far as the subject of consideration for the easement is concerned, the conveyance clearly does three things. It provides for a "total payment of $1000.00"; it shows how the amount was computed; and it makes a special provision for certain types of probable future damages which might arise from *future use* of the easement. It is clear that the instrument was designed to, and apparently did, deal with the whole subject of consideration and damages as then known and contemplated. It would appear to exclude any additional future payment *for the acquisition* of the easement, which is clearly the subject of this action.

No matter which of the tests is to be applied here, it appears that the determination of the trial court was correct. The instrument itself appears to be complete on the subject of consideration to be paid for the ease-

ment and the elements of damage for which future payment would be made when and if such damage occurred. The allegation in the petition that there was made a contemporaneous oral agreement to pay in the future some unspecified additional amount for the acquisition, depending upon whether other persons later received more money, contradicts the provision, making "a total payment of $1000.00."

Let us now apply Wigmore's rule to the facts alleged. He says: ". . . the inquiry is whether the writing was intended to cover a *certain subject* of negotiation; for if it was not, then the writing does not embody the transaction on that subject; and one of the circumstances of decision will be whether the one subject is so associated with the others that they are in effect 'parts' of the same transaction, and therefore, if reduced to writing at all, they must be governed by the same writing." 9 Wigmore on Evidence (3d Ed.), § 2430, p. 97. He goes on to say: "What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. Thus the apparent paradox is committed of receiving proof of certain negotiations in order to determine whether to exclude them; and this doubtless has sometimes seemed to lower the rule to a quibble. But the paradox is apparent only. The explanation is that these alleged negotiations are received only provisionally. Although in form the witnesses may be allowed to recite the facts, yet in truth the facts will be afterwards treated as immaterial and legally void, if the rule is held applicable." 9 Wigmore on Evidence (3d Ed.), § 2430(2), p. 98. He also says: "In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the *particular element of the alleged extrinsic negotia-*

*tion is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element . . . ." 9 Wigmore on Evidence (3d Ed.), § 2430(3), p. 98.

Applying the foregoing rule we conclude that clearly the subject of total consideration was so a part of the transaction that "if reduced to writing at all, [it] must be governed by the same writing." Secondly, the subject of consideration was in fact dealt with in the instrument.

If we look to the Restatement rule we conclude: (1) The oral agreement was not for a separate consideration. Only one thing was being conveyed. There was no separate consideration for an additional payment. (2) An oral agreement for an unspecified future payment dependent upon extraneous events is not such an agreement as might naturally be made as a separate agreement between persons dealing at arm's length for property which would be the subject of eminent domain proceedings if negotiations fail. This seems particularly true where any agreement to convey an easement, in order to be valid and enforceable, must be evidenced by a memorandum sufficient to satisfy the statute of frauds and signed by the party to be bound. This conclusion seems also fortified by the circumstance that if the parties were seeking to avoid eminent domain proceedings, any such agreement would provide for the determination of how the added consideration was to be determined. Otherwise litigation would be in any event almost inevitable.

This case is clearly distinguishable from that category of cases such as: Norman v. Waite, *supra,* which was a suit to foreclose a mortgage and proof was permitted to show that there was a failure of consideration for the note supporting the mortgage (the evi-

dence in that case did not in any way contradict or vary the terms of the note and mortgage); Wiltrout v. Showers, *supra*, where the agreed consideration for the purchase of land was $3,800, but only $3,300 was paid, and the court permitted proof that the balance of $500 was to be paid by assuming the existing mortgage; Schommer v. Bergfield, *supra*, where the question was whether the stated consideration had in fact been paid; and Weiner v. Hroch, *supra*, involving essentially the same circumstances as Wiltrout v. Showers, *supra*.

The last question to be answered is whether the issue may be decided upon demurrer. The answer, at least insofar as is applicable under the facts here pleaded in the petition, is found in A-1 Finance Co., Inc. v. Nelson, 165 Neb. 296, 85 N. W. 2d 687. In that case the plaintiff pled a contemporaneous oral agreement which attempted to vary the terms of the written instrument, a promissory note. The court pointed out that in ruling on the demurrer the court does not consider facts which are irrelevant, immaterial, incompetent, or allegations of fact which are legally ineffective. That covers this case.

AFFIRMED.

NEWTON, J., concurs in the result.

McCOWN, J., dissenting.

I have no quarrel with the general principles of law set out in the majority opinion with respect to the parol evidence rule. The application of those rules to the facts pleaded, however, requires an interpretation and construction of the pleadings as well as the facts. In making that interpretation here the majority opinion has failed to apply another basic rule of law. A party who stands on a general demurrer to a petition thereby admits all material facts well pleaded and must take all the consequences which result from such admission. A petition challenged by demurrer charges what by reasonable and fair intendment may be implied from the facts stated. May Plumbing Co. v. Shaver, 182 Neb.

251, 153 N. W. 2d 911. The ruling of the District Court in sustaining a demurrer must be determined in the light of those requirements. See Hester v. Young, 154 Neb. 227, 47 N. W. 2d 515. While the pleadings might have been more artfully drawn here, they are nevertheless entitled to the benefit of those rules.

Paragraph 2 of plaintiffs' petition pleaded in toto: "That the Defendant purchased an easement across Plaintiffs' said lands in September, 1968; as part of the negotiations therefor Defendant's easement purchaser promised to Plaintiffs that if they would sign Defendant's proposed easement and Defendant thereafter had to pay more than said amount to other land owners, that Defendant would then pay Plaintiffs additional funds for said easement to equalize such payments."

A reasonable inference can be drawn that the portion of the agreement dealing with the easement was integrated but the entire agreement was not. Restatement, Contracts 2d, T.D. No. 5, section 236, page 127, deals with complete and partially integrated agreements. Comment a states in part: "Even though there is an integrated agreement, consistent additional terms not reduced to writing may be shown, unless the court finds that the writing was assented to by both parties as a complete and exclusive statement of all the terms."

Restatement, Contracts 2d, T.D. No. 6, section 239, page 28, dealing with the effect of an integrated agreement on prior agreements under the parol evidence rule states at comment a: "Where an agreement is partly oral and partly written, the writing is at most a partially integrated agreement. See § 235."

Section 24, Restatement, Contracts 2d, T.D. No. 6, section 242, page 45, provides: "Consistent Additional Terms. (1) Evidence of a consistent additional term is admissible to explain or supplement an integrated agreement unless the court finds that the agreement was completely integrated.

"(2) An agreement is not completely integrated if it

omits a consistent additional agreed term which is (a) agreed to for separate consideration, or (b) such a term as in the circumstances might naturally be omitted from the writing."

The alleged oral agreement in no way challenges the easement nor the fact that it was executed and integrated. The pleading concedes that the easement was final and binding on the plaintiffs but it does not concede that the easement represented an integration of the complete agreement but instead alleges a separated or unintegrated oral agreement for a different or separate consideration with consistent additional terms. The alleged oral agreement does not vary or contradict any of the terms of the easement nor dispute its validity in any way.

By reasonable intendment plaintiffs have alleged that in consideration for plaintiffs executing the easement the defendant agreed that if it thereafter paid other landowners a higher unit price per pole for similar easements it would then pay to plaintiffs the difference between the unit amount paid to plaintiffs and the higher unit amount paid to any such other landowners.

Such an oral agreement, if established by the evidence, and if sufficiently specific, would not be barred by the parol evidence rule but the issues involved cannot be determined on the basis of the pleadings without evidence. To dispose of this case on the pleadings, as the court does, fails to give the plaintiffs the benefit of the rule that a demurrer to a petition admits all material facts well pleaded and any reasonable and fair intendments which may be implied from the facts stated.

BOSLAUGH and BRODKEY, JJ., join in this dissent.