SILVERMAN & SILVERMAN, A PARTNERSHIP, APPELLANT,
v. ARBOR STREET PARTNERSHIP, A PARTNERSHIP,
APPELLEE.

330 N.W.2d 904

Filed March 4, 1983. No. 81-821.

Bruce H. Brodkey of Garber & Batt, for appellant.

Jeffrey A. Silver, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

This case arises out of a controversy concerning a lease of office space. The plaintiff is a partnership whose partners are engaged in the practice of law. The defendant is the owner of an office building at 2437 South 130th Circle, Omaha, Nebraska.

On February 25, 1980, the plaintiff entered into a written lease for office space in the defendant's building. The lease was the result of negotiations extending over a period of more than a month. The form of lease originally submitted to the plaintiff was unsatisfactory. The instrument finally executed was a form lease used by the defendant which was modified by a "rider" drafted by the plaintiff.

At the time the parties entered into the lease the office building was under construction. The space adjacent to the plaintiff's office was unfinished because the defendant had not yet secured a tenant for that space. The grounds surrounding the building had not been sodded or landscaped.

The plaintiff moved into the building shortly before May 1, 1980, the date upon which the term of the lease commenced. Instead of a hallway leading to the plaintiff's office, there was a large open space which was unfinished. A wall to complete the hallway was not constructed for approximately a year. Some sod was placed around the building about 6 months after the plaintiff moved in, but no landscaping was done. The areas which had not been sodded were allowed to grow up in weeds. The plaintiff also complained about the cleaning in and around the building and the maintenance of the parking lot.

This action was commenced September 5, 1980, to recover damages alleged to have resulted from the defendant's failure to perform the lease. The amended petition alleged that the "parties contemplated and agreed" to the construction and wallpapering of a hallway; that the parties had agreed that the premises would be attractively landscaped in the spring of 1980; that the defendant failed to clean and maintain the common areas and permitted the grounds to become overgrown with noxious weeds; and that the building and grounds had an unkempt and incomplete appearance. The plaintiff prayed for damages for the difference between the rent reserved in the lease and the actual fair rental value, loss of profits, and "extreme embarrassment and humiliation and mental anguish to the plaintiff together with the loss of goodwill in the community."

At the close of the plaintiff's evidence the trial court sustained the defendant's motion to dismiss. The plaintiff has appealed. The assignments of error relate to evidentiary rulings by the trial court and the sustaining of the motion to dismiss.

Although the lease and rider consist of some seven pages, the controversy centers around paragraph 1 of the rider, which provides as follows: "1. CONSTRUCTION. Lessor agrees to complete construc-

tion of the Building in which the leased premises are to be located at its cost and expense. All work other than that to be performed by Lessor shall be done by Lessee at Lessee's cost and expense, the same to include providing storage shelving, bookshelves, reception room counter, and any wall finish other than building standard paint. Lessor's work shall include installation of heating and air conditioning equipment of sufficient capacity to adequately heat and cool the leased space including a thermostat to be controlled by Lessee; the erection and finish with building standard paint all walls, with party walls to be sound proofed; all doors and door hardware; suspended ceilings; all supply and return registers with necessary duct work; lighting (to include at least three light fixtures in each of the offices marked 'attorney's offices' on Exhibit A, and such additional lighting fixtures as may be necessary to conform to recognized office lighting standards); baseboard strips on all walls; wall to wall carpet on all floors; window blinds and all electrical outlets, switches and covers, all as shown generally on Exhibit A. Lessor's work shall be completed by April 15, 1980, and Lessee shall have access to the leased premises without charge until the commencement of the lease term, other than proration of utilities as provided for herein.''

The plaintiff argues that in paragraph 1 the defendant agreed to complete construction of the entire building by April 15, 1980. We do not agree.

Paragraph 1 relates, primarily, to the construction to be completed in the area of the building leased to the plaintiff, and allocates the cost as between the parties. The cost of construction of the building proper, as distinguished from fixtures (such as the shelving and reception room counter) was to be paid by the defendant. The installation of heating and air conditioning equipment, ductwork, lighting, carpeting, suspended ceilings, etc., in the plaintiff's offices was to be completed by April 15, 1980. This para-

graph did not provide as to *when* the construction of the rest of the building would be completed.

Paragraph 4 of the rider provides for payment by the lessee of its pro rata share of the cost of maintaining the common areas. Included as such expense is "planting, replanting and replacing flowers and landscaping." There is no provision in the lease as to when landscaping of the premises would be completed.

There was no provision in the lease as to when that part of the building not leased by the plaintiff and the landscaping of the grounds were to be completed, or that they would be completed at any time. To support the plaintiff's contention that the parties had agreed to a completion date for the rest of the building and the landscaping of the premises, the plaintiff attempted to introduce evidence as to conversations between the parties during the negotiations preceding the execution of the lease. Objections to this evidence upon the basis of the parol evidence rule were sustained and the testimony was not admitted.

The plaintiff contends that parol evidence was admissible to explain and aid in the construction of the agreement. That contention might have merit if some ambiguity existed as to when lessor was to perform the work lessee claims was to be done. However, the lease is completely silent as to such matters, and to permit the introduction of such evidence would be to expand the terms of the contract by parol evidence.

Parol evidence is not admissible to add to, contradict, or vary the terms of a written contract. *Rullman v. LaFrance, Walker, Jackley & Saville,* 206 Neb. 180, 292 N.W.2d 19 (1980). Where negotiations between the parties result in an agreement which is reduced to writing, the written agreement is the only competent evidence of the contract in the absence of fraud, mistake, or ambiguity. *Frank McGill, Inc. v. Nucor Corp.,* 195 Neb. 448, 238 N.W.2d 894 (1976).

We think there was no ambiguity in the lease concerning the matters which are in dispute between the parties. The defendant simply made no promise in the lease as to when the construction of the rest of the building and the landscaping of the grounds would be completed. The effect of admitting parol evidence concerning the prior negotiations would be to add terms to the lease.

The plaintiff argues that the agreement between the parties was only partially integrated. The agreement on its face appears to be fully integrated. The lease contained a provision concerning completion of construction of the building. The provision was that such construction shall be at the expense of the lessor. The inference is that if the parties had agreed upon a time for completion of the entire building, it would have been stated in the lease, just as the completion date for construction of the leased area was provided for in paragraph 1 of the rider. See *Traudt v. Nebraska P. P. Dist.,* 197 Neb. 765, 251 N.W.2d 148 (1977). We conclude that the lease was fully integrated and parol evidence was not admissible to supply terms omitted from the instrument.

The plaintiff also attempted to introduce testimony by a real estate broker and appraiser as to the meaning of the language in paragraph 1 of the rider. The construction of this paragraph presented a question of law, not fact, and the objections to this testimony were properly sustained.

The only evidence as to damages was testimony by the real estate broker and appraiser called by the plaintiff that in his opinion the fair rental value on March 25, 1981, of the space leased by the plaintiff was approximately $4.50 per square foot rather than $8 per square foot, the rent reserved in the lease. There was no evidence as to loss of profits or goodwill. Although the plaintiff may have suffered some embarrassment because of the appearance of the building and grounds, there was no evidence of "ex-

treme embarrassment," "humiliation," or "mental anguish" which could afford a basis for recovery.

As the trial court stated in its ruling on the motion to dismiss, there was some evidence of failure on the part of the defendant to fully perform the maintenance and cleaning obligations set out in the lease. There was no evidence which would provide a suitable basis upon which the jury could award damages for that breach.

We conclude that the motion to dismiss was properly sustained and the judgment should be affirmed.

AFFIRMED.